IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL D. MORIARTY,<br><br>          Plaintiff,<br><br>     v.<br><br>PTL. JOSEPH DIBUONAVENTURA,<br>et al.,<br><br>          Defendants. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action<br>No. 14-cv-2492 (JBS/AMD)<br><br><br>**OPINION** |

APPEARANCES:

William C. Popjoy, III, Esq.
POPJOY & KELLY, LLC
23 Euclid St., 2nd Floor
Woodbury, NJ 08096
     Attorney for Plaintiff

A Michael Barker, Esq.
BARKER, GELFAND & JAMES
Linwood Greene, Suite 12
210 New Road
Linwood, NJ 08221
     Attorney for Defendant Washington Township Police
Department


**SIMANDLE, Chief Judge:**

I.   **INTRODUCTION**

     This matter comes before the Court on a motion to dismiss

by Defendant Washington Township Police Department ("the WTPD").

[Docket Item 7.]  Plaintiff Paul D. Moriarty, a member of the

New Jersey General Assembly, alleges that Defendant Patrolman

Joseph DiBuonaventura initiated an illegal traffic stop and

falsely accused him of traffic violations, including driving while intoxicated.  Plaintiff also alleges that DiBuonaventura and the WTPD engaged in malicious prosecution when they initially refused to drop charges after Plaintiff's account of the traffic stop was corroborated by video footage from DiBuonaventura's dashboard camera.  Furthermore, Plaintiff alleges the WTPD established inadequate policies, procedures, and customs with regard to the dismissal of charges, traffic stop protocol, and employee training, supervision, and monitoring.

The key question posed by this motion is whether the facts pleaded in the Complaint sufficiently allege the existence of an illegal policy or custom by the WTPD that it knew or should have known would result in violations of the constitutional rights of New Jersey citizens, such that it may be liable under 42 U.S.C. § 1983.  In addition, the Court is asked to determine whether, as a matter of law, the WTPD may be liable for plaintiff's common law malicious prosecution claim.  For the reasons explained below, the Court will dismiss the common law malicious prosecution claim against WTPD with prejudice, and will dismiss all other counts against WTPD without prejudice and permit Plaintiff opportunity to amend his complaint.

## II.   BACKGROUND

For the purposes of this motion, the Court accepts Plaintiff's allegations as true and draws the facts from the Complaint.  On July 31, 2012, Plaintiff was driving his vehicle on Black Horse Pike in Washington Township, New Jersey. (Compl. ¶¶ 12-13.)  Upon Plaintiff's arrival at a restaurant, Patrolman DiBuonaventura stopped Plaintiff's vehicle, requested Plaintiff's driving documents, and "accused him of violating traffic regulations by 'cutting him off' and driving while intoxicated." (Id. ¶ 14.)  Plaintiff maintains he did not commit any motor vehicle violations so as to provide DiBuonaventura "or any reasonable law enforcement officer" with legal grounds to effectuate a traffic stop.  (Id. ¶ 20.) DiBuonaventura conducted a "field sobriety test" at the scene, which Plaintiff "satisfactorily completed." (Id. ¶ 15.) Nonetheless, DiBuonaventura arrested Plaintiff and transported him to police headquarters.  (Id.)

While in custody, Plaintiff was handcuffed and issued three citations: Driving while Intoxicated in violation of N.J.S.A. § 39:4-50; Refusal to Submit to a Breath Test in violation of N.J.S.A. § 39:4-50.4a; and Failure to Maintain Lane in violation of N.J.S.A. § 39:4-88(b).  (Id. ¶ 16.)  DiBuonaventura authorized and filed multiple official reports with the WTPD detailing the stop, seizure, arrest, processing, and filing of

3

charges against Plaintiff.  (Id. ¶ 17.)   All charges filed
against Plaintiff ultimately were dismissed by the Gloucester
County Prosecutor's Office.  (Id. ¶ 19.)  Plaintiff implies that
the charges were dropped after police reviewed the video footage
of the traffic stop captured by DiBuonaventura's dashboard
camera, which Plaintiff alleges vindicates him and proves that
"Officer DiBuonaventura's claims of any impropriety in
Plaintiff's operation of his vehicle were false and that there
was no basis for the stop, seizure, and therefore ultimately
arrest of Mr. Moriarty."  (Id. ¶ 18.)  Plaintiff further alleges
the WTPD "had actual knowledge and constructive knowledge of the
unlawful propensities of Officer Joseph DiBuonaventura prior to
the incident at issue, and failed to adequately train, supervise
and monitor the actions of Officer DiBuonaventura."  (Id. ¶ 23.)

   In April 2014, Plaintiff filed this Complaint asserting
both federal and state-law claims.[1]  He brings four claims under
42 U.S.C. § 1983 against DiBuonaventura, individually and in his
official capacity, and the WTPD for the alleged civil rights
violations and one claim under New Jersey state law for

---

[1] This Court has jurisdiction over Plaintiff's federal claims
under 28 U.S.C. § 1331 and exercises supplemental jurisdiction
over Plaintiff's related state-law claims under 28 U.S.C. §
1367.

malicious prosecution.[2] (<u>Id.</u> ¶ 8.)  Specifically, in Count I,
Plaintiff alleges that Officer DiBuonaventura violated the
Fourth and Fourteenth Amendments of the U.S. Constitution and
Art. I, Sec. 7 of the New Jersey Constitution, because
DiBuonaventura illegally stopped and falsely arrested Plaintiff
and "intentionally and maliciously filed false written and
verbal reports . . . ." (<u>Id.</u> ¶¶ 26-27.)  In Count II, Plaintiff
alleges malicious prosecution against DiBuonaventura and the
WTPD because they "initiated a prosecution and continued to
prosecute Plaintiff after the evidence . . . disclosed the
falsity of the charges" and that the charges were dismissed
after an "unreasonable" period of time. (<u>Id.</u> ¶¶ 31-32.)  In
Count III, Plaintiff alleges that the WTPD "established, knew of
and acquiesced to policies, procedures, and customs that it
knew, or should have known, would result in a violation of
constitutional rights for New Jersey citizens." (<u>Id.</u> ¶ 35.)  In
particular, Plaintiff cites inadequate policies, procedures, and
customs as to the timely dismissal of charges, routine traffic
stop protocol, and the "grounds required to pursue charges
against an individual." (<u>Id.</u> ¶¶ 36-37.)  In Count IV, Plaintiff

---

[2] The Court is unable to determine what new cause of action
Plaintiff alleges in Count VI that the previous Counts do not
already allege. Count VI is the only count that Plaintiff does
not label with a cause of action, and the allegations contained
in Count VI appear duplicative of the previous Counts.
Therefore, the Court will dismiss Count VI for failure to state
a distinct claim.

alleges that the WTPD failed to properly train, supervise, and monitor DiBuonaventura "as to the probable cause legal standard for a traffic stop and arrest and the steps to be taken when they discover it was without probable cause." (Id. ¶ 40.) In Count V, Plaintiff alleges a claim of malicious prosecution, apparently against both DiBuonaventura and the WTPD. (Id. ¶¶ 44-49.)

In lieu of filing an Answer, the WTPD brings this motion to dismiss. None of the claims against DiBuonaventura in his individual capacity are addressed in this motion, as he is not a moving party.

## III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

6

Allegations that are no more than legal conclusions are not entitled to the same assumption of truth.  Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012).  To determine if a complaint meets the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief."  Id. (internal quotation marks omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

**IV.  DISCUSSION**

**A. Consideration of matters outside the pleadings**

The Court must first address the extrinsic material Plaintiff offers in support of his position.  "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  When matters outside the pleading "are presented to and not excluded by the court" on a motion under Rule 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56," and the court must give the parties "a reasonable opportunity to present all material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); see also Crown Cent. Petroleum

_Corp. v. Waldman_, 634 F.2d 127, 129 (3d Cir. 1980).  However, the district court may consider a "'document integral to or explicitly relied upon in the complaint'" or an "'undisputedly authentic document . . . if the plaintiff's claims are based on the document,'" without converting a Rule 12(b)(6) motion into a motion for summary judgment.  _In re Rockefeller Ctr. Props., Inc., Sec. Litig._, 184 F.3d 280, 287 (3d Cir. 1999) (quoting _In re Burlington Coat Factory Sec. Litig._, 114 F.3d at 1426, and _PBGC v. White Consol. Indus._, 998 F.3d 1192, 1196 (3d Cir. 1993)) (emphasis in _In re Rockefeller Ctr. Props._).

Plaintiff provides several new factual allegations in a "Written Statement of Complainant Paul Moriarty" attached to his opposition brief.  (Pl. Opp'n Ex. A.)  Plaintiff describes his precise route of travel to the restaurant, maintaining that "at no time during this time interval did the Plaintiff exceed the speed limit, fail to maintain a lane, or commit any other violations . . . ."  (_Id._ ¶¶ 5-15.)  Plaintiff further asserts that, as the former mayor of Washington Township, he recognized DiBuonaventura and was aware DiBuonaventura had been terminated for "significant disciplinary problems" and then reinstated. (_Id._ ¶¶ 16-18.)

As previously stated, Fed. R. Civ. P. 12(d) permits the court to consider material outside of the pleadings when deciding a motion to dismiss, but the motion "_must_ be treated as

one for summary judgment . . . ." (emphasis added).  At this
stage, it is premature to convert this motion to a motion for
summary judgment.  The parties have not met for an initial
scheduling conference, there is no indication that any discovery
has been exchanged, and the Defendants have not filed an Answer.

However, even if the Court does not convert the motion, it
may consider material outside the pleading that is "integral to
or explicitly relied upon in the complaint" or if the document
is "undisputedly authentic" and the "plaintiff's claims are
based on the document."  In re Rockefeller Ctr. Props., Inc.,
Sec. Litig., 184 F.3d at 287 (quotations and emphasis omitted).
Here, Plaintiff's written statement does not fit into any of
these categories.  Plaintiff presents factual assertions to
supplement his pleading; his statement is merely a document
created for this motion practice and is neither integral to, nor
explicitly relied upon in, the Complaint.

Accordingly, because conversion to a motion for summary
judgment is inappropriate at this time, and because Plaintiff's
written statement is neither "integral to" nor "explicitly
relied upon in the complaint," the Court will not consider
Plaintiff's written statement for the purposes of deciding this
motion.

**B. Section 1983 claims**

The WTPD argues that Plaintiff's Complaint fails to properly state a § 1983 claim. (Def. Mot. at 2.) In particular, the WTPD contends that Plaintiff offers no factual grounds to support his allegation that the WTPD promulgated an illegal policy or custom that caused Plaintiff's alleged constitutional deprivations. (<u>Id.</u> at 11.) The WTPD maintains that the fact that Officer DiBuonaventura may have violated Plaintiff's rights in this instance is not, in and of itself, sufficient to establish municipal liability. (<u>Id.</u> at 12.) For these reasons, the WTPD asserts that the first four counts of Plaintiff's Complaint must be dismissed.

Plaintiff counters that he should be permitted the opportunity to obtain discovery because documentation of civilian complaints may reveal that the WTPD perpetuated a policy or custom of inadequate training and supervision of DiBuonaventura. (Pl. Opp'n. at 4-5.) In his opposition brief, Plaintiff asserts he has pled his § 1983 claims "with as much specificity as possible without having received any internal affairs and/or training files with regard to the Officer." (<u>Id.</u> at 4.)

**1. Section 1983 liability**

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. It is well established that municipal liability under § 1983 cannot be based on respondeat superior, but "must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007) (citing Monell v. New York City Dep't. of Soc. Servs., 436 U.S. 658, 691-95 (1978)); see also Bielevicz v. Dubinon, 915 F.2d 845, 849-50 (3d Cir. 1990). A municipality can be liable only "when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Monell, 436 U.S. 658). Thus, Monell created a "two-track path" for a plaintiff to establish municipal liability under § 1983, depending on whether the allegation is premised on municipal policy or custom. McTernan, 564 F.3d at 657 (citing Beck, 89 F.3d at 971).

A government "policy" is established "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." McTernan, 564 F.3d at 658 (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (quotation and citations omitted).  On the other hand, a "custom" can be proven when a course of conduct, though not authorized by law, is "'so permanent[] and well-settled' as to virtually constitute law." Id.; see also Watson, 478 F.3d at 155-56 (holding that "custom may be established by proving knowledge of, and acquiescence to, a practice.") (citing Fletcher v. O'Donnell, 867 F.3d 791, 793-94 (3d Cir. 1989)).  It is clear that under either route, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Watson, 478 F.3d at 156 (citing Bielevicz, 915 F.2d at 850); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (holding that "an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy . . . .")

Where the policy concerns a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into

contact." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (quoting Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999)). Ordinarily, to demonstrate "deliberate indifference" for purposes of failure to train, "[a] pattern of similar constitutional violations by untrained employees" is necessary. Id. at 223 (quoting Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011)). A pattern of violations demonstrates a deficiency in the current policy and "puts municipal decisionmakers on notice that a new program is necessary." Id. Further, a municipality's continued adherence to an approach that they knew or should have known resulted in constitutional violations by employees "may establish the conscious disregard for the consequences of their action--the 'deliberate indifference'--necessary to trigger municipal liability." Id. (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)).

However, there are certain situations where the need for training is "'so obvious' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights" even without a pattern of constitutional violations. Id. (quoting City of Canton v. Harris, 489 U.S. 378 at 390 n.10 (1989)). In Canton, the U.S. Supreme Court illustrated "single-incident" failure-to-train liability with a hypothetical: a city arms its new police officers with firearms but fails to train

them as to the constitutional limitations on the use of deadly force. Canton, 489 U.S. at 390 n.10. In this scenario, the need for such training would be "so obvious" that the failure to train could provide a basis for the "deliberate indifference" necessary to establish single-incident municipal liability. Id.

"Deliberate indifference" can also be established when constitutional injuries are a "highly predictable consequence" of the municipalities' failure to train. Id. at 225. In Thomas, the plaintiff brought claims against Cumberland County and corrections officers at Cumberland County Correctional Facility ("CCCF") under § 1983 alleging inadequate conflict de-escalation and intervention training. Thomas, 749 F.3d at 219-21. The plaintiff brought his claims under a "single-incident" theory, arguing that municipal decisionmakers were "deliberately indifferent" when they disregarded training relevant to inmate safety. Id. at 225. The plaintiff alleged that Cumberland County did not provide its officers with conflict de-escalation and intervention training as part of its mandatory pre-service training requirements. Id. at 223. Thomas provided evidence that fights occurred regularly in the prison. Id. The Third Circuit found this evidence relevant in determining whether Thomas' injury was a "highly predictable consequence" of the CCCF's failure to provide intervention training, since the court could infer that based on the frequency of fights, the situation

14

was likely to recur, thus demonstrating that the failure to provide intervention training establishes the requisite "deliberate indifference" on the part of the municipality.  Id.

The U.S. Supreme Court examined the limitations of single-incident liability in Connick, where an exonerated convict sought to hold the district attorney liable for failing to train prosecutors on discovery disclosure obligations regarding exculpatory evidence.  Id. at 224 (citing Connick, 131 S. Ct. at 1355).  In finding that the failure to train did not "fall within the narrow range of Canton's hypothesized single-incident liability," the Court emphasized the training and professional obligations of prosecutors, which differentiate them from other public employees.  Id. (quoting Connick, 131 S. Ct. at 1361-63).  Whereas there is an obvious need for specific training in the Canton scenario because new police officers are unlikely to be "familiar with the constitutional constraints on the use of deadly force," prosecutors receive extensive legal training before entering the profession and are ethically bound to be familiar with discovery disclosure obligations.  Connick, 131 S. Ct. at 1354-55.  Thus, "recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training."  Id. at 1355.

A plaintiff bears the additional burden of proving causation.  Id.  "To establish the necessary causation, a

plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." Bielevicz, 915 F.2d at 850.  In other words, to sustain a § 1983 action against a municipality, a plaintiff must establish that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [plaintiff's] injury." Id.

### 2. Analysis

Here, Plaintiff's Monell claims rest on three allegations in the Complaint:

> 36.     The [WTPD] . . . had no adequate policies to dismiss in a timely fashion the charges against Plaintiff after it learned them to have been false.
>
> 37.     The [WTPD] established inadequate policies, procedures, customs and supervisory monitoring systems with regard to an officer's traffic stops protocol and the grounds required to pursue charges against an individual.
>
> . . . 40.     The [WTPD], failed to properly train, supervise, and monitor Officer Joseph DiBuonaventura as to the probable cause legal standard for a traffic stop and arrest and the steps to be taken when they discover it was without probable cause.

(Compl. ¶¶ 36, 37, 40.)  Plaintiff's factual allegations concern only the Plaintiff's traffic stop and arrest, and as such, do not permit the inference that any policies or customs existed and caused Plaintiff's alleged constitutional injuries.  The Complaint does not allege the existence of a municipal policy or

custom to pursue charges without probable cause; instead, the Complaint alleges that the police authorities pursued charges without probable cause in this instance.  Therefore, if Plaintiff is to establish municipal liability, he must do so under a "single-incident" theory.

As discussed above, an illegal policy or custom can be inferred from a single unconstitutional act by a municipal policymaker.  Praprotnik, 485 U.S. at 123.  However, nothing in the Complaint permits the inference that Officer DiBuonaventura is a municipal official with final policymaking authority.  See LaVerdure v. Cnty. of Montgomery, 324 F.3d 123, 126 (3d Cir. 2003) ("To be a policymaker for § 1983 purposes, an official must have final policymaking authority") (emphasis added); Praprotnik, 485 U.S. at 123 (holding that state law determines "whether a particular official has final policymaking authority"); Loigman v. Twp. Comm. of Twp. of Middletown, 185 N.J. 566, 591-92 (2006) (holding that special counsel for township was not a municipal policymaker for § 1983 purposes because he "did not exercise control over a policymaking division of municipal government" or possess "final policymaking authority"); Cherrits v. Vill. of Ridgewood, 311 N.J. Super. 517, 534 (App. Div. 1998) (recognizing that chief of police was policymaker for municipality). DiBuonaventura's pleaded title of "Officer," reasonably suggests that he is not an official with

17

final policymaking authority for the WTPD.  Because it may not
be reasonably inferred that DiBuonaventura is a municipal
policymaker, an unconstitutional municipal policy or custom
cannot be inferred from the single incident described in the
Complaint.

Next, the Court must determine whether the factual
pleadings permit the inference that Plaintiff's claimed
constitutional injuries were an "obvious" or "highly
predictable" consequence of an allegedly deficient training
program.  Here, the Complaint lacks factual content to permit a
reasonable inference that a deficient training program existed,
of which Plaintiff's alleged injuries were the "obvious" or
"highly predictable" consequence.  Plaintiff simply alleges in
conclusory fashion that the WTPD failed to properly train
Officer DiBuonaventura as to traffic stop protocol and the
grounds required to pursue charges against citizens.  (Compl. ¶¶
37, 40.)  "Stating . . . a claim requires a complaint with
enough factual matter (taken as true) to suggest" the required
element.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).
Plaintiff seeks to excuse his lack of factual support for his
allegations of insufficient training and supervision by stating
that discovery will reveal DiBuonaventura's training history,
and perhaps, a deficient training program.  (Pl. Opp'n at 4.)
This is insufficient to satisfy the "plausibility" pleading

standard, let alone sufficient enough to permit the inference of
"deliberate indifference" from a single-incident violation for
the purposes of a § 1983 claim for failure to train.  There are
no facts in the Complaint to suggest that DiBuonaventura's
actions were the result of a lack of training, as opposed to
DiBuonaventura's individual actions.

Here, as in Thomas, the alleged conduct falls somewhere on
the spectrum between the examples of Canton (arming police
without training in the use of deadly force) and Connick (lack
of in-house training for prosecutors who have received law
school training).  But whereas in Thomas, the plaintiff alleged
the high frequency of fights, permitting the Third Circuit to
conclude that the injury in that case was a highly predictable
consequence of a failure to provide training, Thomas, 749 F.3d
at 225, here, no similar factual allegations are forthcoming in
the pleadings. Nothing in the Complaint permits the inference
that Plaintiff's alleged injuries were a highly predictable
consequence of a lack of training. Moreover, it is not a fair
inference from the Complaint, as presently pled, that there was
"[a] pattern of similar constitutional violations by untrained
employees" of the WTPD, as required by Connick and Thomas,
supra.  Therefore, the Complaint presently fails to state a
claim under § 1983 for municipal liability for lack of training

19

to prevent constitutional violations of the sort claimed by the Plaintiff.

The Court also holds that Plaintiff's failure to allege any conduct by a municipal decisionmaker serves as an independent, sufficient ground for dismissal.  In McTernan, the plaintiff, a pro-life advocate, brought action under § 1983 against the City of York and its mayor, police chief, and police sergeant, challenging the constitutionality of a restriction imposed by police on his ability to walk in an alley adjacent to a reproductive health clinic so that he could speak to clients of the clinic.  McTernan, 564 F.3d at 641.  Plaintiff alleged that "the City of York, its Mayor and Police Chief [] have routinely dispatched police officers to Planned Parenthood . . . to serve as private security guards for Planned Parenthood."  Id. at 658. Plaintiff further alleged that he and others were "periodically threatened with arrest and . . . told to leave the alley" and that the City and its agents, acting under color of the City of York, had a policy of ignoring First Amendment rights.  Id.

The district court concluded that McTernan "failed to satisfy the 'rigorous standards of culpability and causation' required for municipal liability," because McTernan failed to identify a custom or policy and specify what exactly that custom or policy was.  Id. (quoting Bryan County, 520 U.S. at 405). The Third Circuit affirmed, finding the complaint insufficient

to establish a claim for municipal liability, because it simply
alleged that McTernan's rights were violated "due to the City's
policy of ignoring First Amendment right[s.]"  Id.  The Third
Circuit also found McTernan's § 1983 claims deficient because
the complaint failed to allege responsibility on the part of a
municipal decisionmaker or policymaker:

> Equally fatal, the four allegations in the complaint
> relevant to McTernan's Monell claim fail to allege
> conduct by a municipal decisionmaker. Although
> McTernan maintains that York officers "periodically"
> instructed protesters to exit the alley, he does not
> plead knowledge of such directives by a municipal
> decisionmaker, such as the Mayor or Police Chief.
> There is no allegation that either the Mayor or the
> Police Chief were aware of, let alone directed, the
> restrictions or participated in formulating traffic
> abatement strategies at the Clinic. Nor do the
> allegations support, indirectly, such an inference.
> The complaint alleges nothing more than directives
> issued ad hoc by individual officers, without
> reference to any formal administrative or policy
> channels. Hence, the allegations are deficient.

Id. at 658-59.

Here, Plaintiff similarly fails to allege any
responsibility on the part of a municipal decisionmaker.
Plaintiff alleges the existence of inadequate policies with
regard to training, traffic stop protocol, and the timely
dismissal of charges, but does not plead that a municipal
decisionmaker, such as the mayor or chief of police, effectuated
such a policy or knew of and acquiesced to it as a "well-settled
custom," nor do the allegations support such an inference.  The

Complaint here simply alleges these undefined policies or customs are insufficient and that Plaintiff's rights were violated as a result, without reference to any administrative approval or acquiescence.  See, e.g., Watson, 478 F.3d at 156-57 (affirming dismissal of plaintiff's § 1983 claims because, in part, plaintiff failed to "show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom") (citation and internal marks omitted).

    The foregoing analysis of Plaintiff's failure to train claim similarly applies to Plaintiff's allegation of municipal liability for inadequate supervision.  See Thomas, 749 F.3d at 222.  The only fact that suggests a failure to supervise and monitor is that some unspecified officials were aware of Officer DiBuonaventura's "unlawful propensities" and nevertheless reinstated him after his disciplinary termination.  However, Plaintiff fails to provide any factual support that DiBuonaventura's propensities included a history of ignoring traffic stop protocol, or the grounds required to pursue charges, or the steps to be taken in order to dismiss charges. Plaintiff simply alleges that DiBuonaventura has "unlawful propensities" and that his superiors were aware of them.  The conduct leading to his previous termination is not stated. Vague references to the "unlawful propensities" that do not

22

affirmatively link those propensities to the injury allegedly suffered by Plaintiff are insufficient to meet the causation pleading requirement.  The Complaint does not plead a "plausible nexus" between the WTPD's alleged failure to supervise DiBuonaventura and his alleged conduct during Plaintiff's stop, seizure, and arrest.  Because Plaintiff has not sufficiently pleaded causation, his § 1983 claim against the WTPD for failure to supervise must be dismissed.

In sum, Plaintiff's § 1983 municipal liability claims for failure to train or supervise Officer DiBuonaventura are dismissed without prejudice, and the Court will permit Plaintiff to file an Amended Complaint curing the deficiencies noted herein within 14 days of the entry of this Opinion.

### C. Municipal liability for official capacity claims

Plaintiff also asserts the WTPD is liable for Officer DiBuonaventura's unconstitutional conduct in his official capacity.  The U.S. Supreme Court has held that in an official-capacity action, a governmental entity is liable under § 1983 only when the entity is a "'moving force'" behind the constitutional deprivation.  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)).  More specifically, in an official-capacity suit, a government policy or custom "must have played a part in the violation of federal law."  Id.

As explained above, Plaintiff fails to sufficiently allege the existence of a municipal policy or custom or that the WTPD was the moving force behind Plaintiff's alleged constitutional deprivations, and therefore all claims against DiBuonaventura in his official capacity are hereby dismissed without prejudice. The Court makes no determination as to the viability of the claims against DiBuonaventura in his individual capacity, as DiBuonaventura is not a moving party.

### D. Common law malicious prosecution claim

The WTPD argues it is immune from liability for Plaintiff's common law malicious prosecution claim under the New Jersey Tort Claims Act ("NJTCA"), which provides: "A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. § 59:2-10. Plaintiff has not opposed this aspect of WTPD's dismissal motion. (Pl. Opp'n.) Under the NJTCA, "willful misconduct" is the "commission of a forbidden act with actual knowledge that the act is forbidden." Stroby v. Egg Harbor Twp., 754 F. Supp. 2d 716, 722 (D.N.J. 2010). As the WTPD is a "public entity," see N.J.S.A. § 59:1-3 (recognizing that "public entity" includes the State and any county, municipality and public authority in the State), it cannot be held liable for the willful misconduct of its employees. See, e.g., Merman v. City of Camden, 824 F. Supp. 2d 581, 597 (D.N.J.

24

2010) (holding that the NJTCA precluded plaintiff from asserting excessive force and assault and battery claims against the defendant city, because the claims were premised on intentional conduct of police officers); Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 444 (D.N.J. 2011) (concluding that the NJTCA barred plaintiff from asserting false arrest and excessive force claims against defendant city, because claims were premised on the willful misconduct of a police officer).

The Complaint alleges that DiBuonaventura "acted with intent, malice, and bad faith," and "intentionally and maliciously filed false written and verbal reports . . . ." (Compl. ¶¶ 24, 27.) Because Plaintiff's malicious prosecution claim is premised on the intentional, willful conduct of Officer DiBuonaventura, the WTPD is immune from liability for official capacity claims under New Jersey law.  See N.J.S.A. § 59:2-10; Graham v. Carini, No. 09-4501, 2011 WL 1639998, at *4 (D.N.J. May 2, 2011) (holding that the defendant city "cannot be held liable on the . . . malicious prosecution claims" because "'actual malice' is an element of a malicious prosecution claim" and § 59:2-10 provides immunity to public entities for the acts of a public employee constituting actual malice or willful misconduct) (citing Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 393 (2009)); Stolinski v. Pennypacker, No. 07-3174, 2008 WL 5136945, at *6 (D.N.J. Dec. 4, 2008) (holding that the

defendant state police department was immune from liability under § 59:2-10 because plaintiff's malicious prosecution claim was premised upon allegations of willful and malicious conduct by four individual state police officers); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 569 (D.N.J. 2000) (granting summary judgment for the defendant city on a New Jersey malicious prosecution claim, citing § 59:2-10 for the proposition that "a public entity is not liable for the acts of a public employee constituting 'a crime, actual fraud, actual malice, or willful misconduct'"); accord O'Connor v. Harms, 111 N.J. Super. 22, 26-27 (App. Div. 1970) ("where 'malice' is an essential ingredient of the tort, a city or comparable public agency is not vicariously liable for the personal malice of the city's officers or employees in performing their public duties"). Accordingly, this Court will dismiss Plaintiff's common law malicious prosecution claim against the WTPD with prejudice.

**V.   CONCLUSION**

For the reasons explained above, the Court dismisses Count V as against the Washington Township Police Department with prejudice, but dismisses all other counts against the Washington Township Police Department without prejudice. If Plaintiff is able to clarify the grounds for its claims in Counts I - IV consistent with this Opinion, Plaintiff may file an Amended

Complaint curing the deficiencies noted herein within 14 days of the entry of this Opinion on the docket. An accompanying Order will be entered.


**July 30, 2014**                          **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           Chief U.S. District Judge

27