NOT FOR PUBLICATION

```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| PAUL D. MORIARTY,<br><br>               Plaintiff,<br><br>      v.<br><br>PTL. JOSEPH DIBUONAVENTURA,<br>et al.,<br><br>               Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>      Civil Action<br>No. 14-cv-2492 (JBS/AMD)<br><br>**MEMORANDUM OPINION** |

APPEARANCES:

William C. Popjoy, III, Esq.
POPJOY & KELLY, LLC
23 Euclid St., 2nd Floor
Woodbury, NJ 08096
     Attorney for Plaintiff

A Michael Barker, Esq.
BARKER, GELFAND & JAMES
Linwood Greene, Suite 12
210 New Road
Linwood, NJ 08221
     Attorney for Defendant Washington Township Police
     Department

Robert A. Baxter, Esq.
KELLEY, WARDELL, CRAIG, ANNIN & BAXTER, LLC
41 Grove Street
Haddonfield, NJ 08033
     Attorney for Defendant Ptl. Joseph Dibuonaventura

**SIMANDLE, Chief Judge:**

     This matter comes before the Court on Defendant Washington Township Police Department's ("the WTPD") motion to dismiss [Docket Item 21] Plaintiff's Amended Complaint. [Docket Item

20.] Plaintiff brought claims against the WTPD and Defendant Officer Joseph DiBuonaventura for initiating an illegal traffic stop, malicious prosecution, and establishing inadequate policies, procedures, and customs with regard to the dismissal of charges, traffic stop protocol, and employee training and supervision. The Court dismissed Plaintiff's Complaint in an earlier opinion [Docket Item 15], and Plaintiff has now filed an Amended Complaint which seeks to cure the deficiencies discussed in the Court's Opinion. [Docket Item 20.] Plaintiff's revised Amended Complaint contains some additional allegations to his § 1983 claims against the WTPD for failure to train, supervise, and discipline (Count III). As all other allegations in Plaintiff's Amended Complaint remain unchanged, the sole inquiry is whether Plaintiff's new allegations make out a plausible claim that there existed a policy or practice of making illegal traffic stops which the WTPD knew or should have known would result in violations of the constitutional rights of citizens.

The Court assumes the parties' familiarity with the factual background, which was fully set forth in the Court's earlier opinion, and will not revisit it here. Because Plaintiff's Amended Complaint fails to state a plausible claim for relief, the Court will grant Defendant's motion to dismiss and will dismiss all claims against the WTPD, and Plaintiff's official

capacity claim against Officer DiBuonaventura, with prejudice. The Court finds as follows:

1. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff failed to set forth sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, legal conclusions are not entitled to the same assumption of truth, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. To determine if a complaint meets the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief." Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (internal quotation marks omitted).

2. The changes to Plaintiff's Amended Complaint are contained entirely in Count III, which are the § 1983 claims

against the WTPD for failure to properly train, supervise, and discipline Officer DiBuonaventura. Within Count III, Plaintiff's Amended Complaint newly alleges that Officer DiBuonaventura "had a pattern and practice of stopping motor vehicle[s] without probable cause, issuing motor vehicle summonses and/or effectuating arrests, and thereafter prosecuting the charges resulting from the unlawful stops without dismissing the same." (Am. Compl. ¶ 36.) Plaintiff states that DiBuonaventura's practice "was so permanent and well-settled as to virtually constitute law." (Id. ¶¶ 42, 49.) Plaintiff further alleges that the Chief of Police at the WTPD "had knowledge of, and/or acquiesced to" DiBuonaventura's pattern and practice, and that despite being aware of DiBuonaventura's practice, "failed to take any precautions against future violations." (Id. ¶¶ 37, 45.) He alleges that DiBuonaventura's unlawful behavior was the result of the WTPD's failure to train and supervise DiBuonaventura in the correct legal standard for making traffic stops and pursuing and dismissing charges, and failure to discipline DiBuonaventura for violations. (Id. ¶¶ 39-41.) Plaintiff also alleges the WTPD's failure also resulted in the "malicious continuing prosecution of the Plaintiff" after discovering that there was no basis for the charges against him. (Id. ¶ 43.) Plaintiff alleges that the WTPD's failure to train, supervise, monitor, and discipline DiBuonaventura "amounted to

4

deliberate indifference to the rights of citizens with whom Officer DiBuonaventura would come into contact." (Id. ¶ 43.)

3. The allegations contained in the factual background remain unchanged from Plaintiffs' original Complaint, and concern only the single traffic stop and arrest of Plaintiff by Officer DiBuonaventura. (Am. Compl. ¶¶ 12-23.)

4. In its earlier opinion, the Court explained that to prevail on a Monell claim against a municipality, a plaintiff must first establish that the municipality had a policy or custom that deprived him of his constitutional rights. (July 31, 2014 Opinion, at 11-12.) McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)). In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed a policy, or acquiesced in the widespread custom, that caused the violation. Watson v. Abington Twp., 478 F.3d 144, 155-156 (3d Cir. 2007). A plaintiff may show the existence of a policy when a decision-maker with final authority issues an official proclamation, policy, or edict." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Custom may be established by showing that a given course of conduct, "although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id.; see also Watson, 478 F.3d at 155-56. For a § 1983 claim of

5

failure to train or supervise municipal employees, the plaintiff must show that the failure to provide training or supervision amounted to "'deliberate indifference" to the rights of persons with whom the employee will come into contact." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014). Deliberate indifference may be demonstrated by showing a pattern of violations which puts the municipal employee on notice that a new program is necessary; or a single incident violation where the need for training was patently obvious. Id. at 223.

    5.   The new allegations in Plaintiff's Amended Complaint are insufficient to allege a plausible § 1983 claim against the WTPD. First, the Court previously held that because Plaintiff's factual allegations contained facts only with respect to the single traffic stop by Officer DiBuonaventura, Plaintiff's original Complaint did not permit an inference that there existed a widespread custom of conduct that caused the constitutional violation. Plaintiff's Amended Complaint does not cure this deficiency. Although Plaintiff now pleads that DiBuonaventura had a "pattern and practice" of making illegal traffic stops and that the practice was "so permanent and well-settled as to virtually constitute law," there are no additional factual allegations in the Amended Complaint which would support this conclusion. The factual background remains unchanged from the original Complaint, and refers only to the single traffic

6

stop made by DiBuonaventura. Plaintiff's new allegations of "pattern and practice" are unsupported and as such, are not entitled to the assumption of truth.

6. Plaintiff argues that an illegal policy or custom of failure to train or supervise municipal employees may be inferred from a single unconstitutional act, here, Officer DiBuonaventura's unlawful traffic stop. (Pl. Br. [Docket Item 26] 12.) In order to establish municipal liability under this "single-incident" theory, however, the plaintiff must allege some facts from which to infer that there was a lack of training or supervision; and that the need for training in that particular situation was "so obvious" that the failure to do so could properly be characterized as "deliberate indifference" to constitutional rights. City of Canton v. Harris, 489 U.S. 378, 390 (1989); see also Connick v. Thompson, 131 S. Ct. 1350, 1361 (2011) (single incident may trigger municipal liability where unconstitutional consequences for failure to train are "patently obvious").

7. Plaintiff's Complaint fails to make out a theory of municipal liability under the single-incident theory. This Court, in its earlier Opinion, had examined Plaintiff's factual allegations and concluded that the Complaint "lack[ed] factual content to permit a reasonable inference that a deficient training program existed, of which Plaintiff's alleged injuries

7

were the 'obvious' or 'highly predictable' consequence." (July 31, 2014 Opinion, at 18.) Plaintiff's Amended Complaint does not cure this deficiency. There are no facts to suggest that the WTPD's training on probable cause during traffic stops was inadequate, nor are there any facts to suggest that DiBuonaventura's unlawful traffic stop in this case was the result of a lack of training, as opposed to DiBuonaventura's individual actions.

8.   For similar reasons, Plaintiff's related § 1983 claims for failure to supervise and failure to discipline are also insufficiently pled. There are no new facts beyond what was in Plaintiff's original Complaint to show that DiBuonaventura was inadequately supervised, or that the WTPD failed to discipline DiBuonaventura for his conduct. Plaintiff's Amended Complaint states only that the WTPD had knowledge of "the unlawful propensities" of DiBuonaventura before the incident at issue with Plaintiff. (Am. Compl. ¶ 23.) These facts have not changed from Plaintiff's original Complaint (see Compl. ¶ 23), and the Court has already dismissed this allegation as insufficient, noting that "[v]ague references to the 'unlawful propensities' that do not affirmatively link those propensities to the injury allegedly suffered by Plaintiff are insufficient to meet the causation pleading requirement." (July 31, 2014 Opinion, at 22-23.)

9. Finally, Plaintiff has failed to allege any facts to support that a decisionmaker at the WTPD had knowledge of the unconstitutional acts. As noted above, to prove the liability of the municipality, a plaintiff must show that a municipal official with policymaking authority either effectuated an unconstitutional policy or knew of and acquiesced in a widespread unconstitutional custom. See McTernan v. City of York, 564 F.3d 636, 658-59 (3d Cir. 2007) (allegations did not establish municipal liability where complaint failed to plead that a municipal decisionmaker such as the Mayor or Chief of Police knew of, let alone directed, the officers' actions). In an attempt to overcome this hurdle, Plaintiff makes the bare assertion that the Chief of Police "had knowledge of, and/or acquiesced to" DiBuonaventura's pattern and practice. Again, Plaintiff's allegation is unsupported by any factual basis suggesting that the Chief of Police was actually aware that DiBuonaventura was making illegal traffic stops and failed to act.[1] See Watson, 478 F.3d at 157 (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990). Plaintiff's conclusory allegation amounts to nothing more than a formulaic recitation of the elements of his claim and will not be credited as true. Accordingly, the Court will dismiss Plaintiff's § 1983

---

[1] Indeed, the allegations indicate only that DiBuonaventura made a single unlawful traffic stop against Plaintiff.

9

municipal liability claims for failure to train, supervise, and discipline Officer DiBuonaventura.

10.   The Court must also dismiss the official capacity claim against Plaintiff DiBuonaventura. Plaintiff asserts the WTPD is liable for Officer DiBuonaventura's own unconstitutional conduct. When a government official is sued in his official capacity, a government entity is liable under § 1983 only when the entity is the "moving force" behind the constitutional deprivation. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotations and citation omitted); <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978) (government entity may not be sued for an injury inflicted by its agents except when agents' conduct was the execution of government policy or custom). As Plaintiff has failed to allege the existence of municipal policy or custom or that the WTPD was the "moving force" behind DiBuonaventura's actions in this case, Plaintiff has not sufficiently stated a claim against DiBuonaventura in his official capacity. The Court makes no determination as to the viability of the claims against DiBuonaventura in his individual capacity, as DiBuonaventura is not a moving party.

11.   Plaintiff's Amended Complaint fails to plead plausible claims for relief and fails to cure the deficiencies of the original Complaint. The Court previously identified these deficiencies and gave Plaintiff an opportunity to cure them.

10

Because Plaintiff has, again, failed to plead plausible claims for relief in non-conclusory terms, Plaintiff's claims against the WTPD will be dismissed with prejudice. An accompanying order will be entered.

| | |
|---|---|
| **March 30, 2015** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |